**Richard GROCE, Administrator ad Prosequendum of Thomas H. Kohnow, Sr., Deceased, Appellant,**

v.

**Frank A. SEDER and George Porch.**

**No. 12782.**

United States Court of Appeals
Third Circuit.

Argued March 6, 1959.

Decided June 2, 1959.

---

---

Theodore R. Mann, Philadelphia, Pa. (Maximillian J. Klinger, Philadelphia, Pa., on the brief), for appellant.

Peter J. Devine, Jr., Camden, N. J. (Kisselman, Devine & Deighan, Peter J. Devine, Jr., Camden, N. J., on the brief), for respondent.

Before GOODRICH, KALODNER and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

This action for wrongful death in a highway accident resulted in a jury verdict and a judgment for the defendants from which the plaintiff, the administrator of the deceased, has appealed. The only question which requires discussion is whether the court interrogated one of the plaintiff's witnesses in such a way as unfairly to discredit the witness and prejudice the plaintiff's case.

The witness, a very deaf man, had stopped his car at the scene of the accident shortly after its occurrence. Indeed, his vehicle had collided, although without appreciable force or damage, with a garbage truck which had been overturned in the principal accident. He was called by the plaintiff as a rebuttal witness in an effort to establish that a state trooper who took measurements at the scene did so at a somewhat later time than the testimony for the defense had indicated, thus increasing the interval during which there might have been changes in the scene.

The direct examination of this rebuttal witness was brief. It covers only seven pages of the printed record. Two pages are required to get the witness to the scene of the accident; the next two pages give his account of what he saw, and the remaining three pages, much taken with colloquy between court and counsel, relate principally to the time of the state trooper's arrival. Cross-examination required only three pages. It dealt quite briefly with the arrival of the witness, the condition of the highway, upon which the garbage from the earlier collision had been scattered, and the position of the overturned truck. It was also brought out that the witness had gone from the scene of the collision to a neighboring house to telephone and that he first saw the state trooper when he returned from this mission. The entire testimony of this witness, as elicited by competent counsel representing the opposing parties, was brief and not notably significant. And although it was obviously elicited with difficulty and need for some repetition because the witness often misunderstood questions and made answers which were not responsive, a coherent account was yielded by this normal adversary proceeding.

At this point the court elected to undertake a further examination of the witness which was about twice the length

of direct and cross-examination combined. There were about five pages of repetitious and quite critical examination of the witness concerning his testimony that he had not seen some of the things that other witnesses had observed at the scene of the accident. There were three pages of questioning about details of the telephoning episode, and later still more inquiry about what transpired during this excursion. Then there was more cross-examination about what the witness had or had not seen in the highway. The witness was required repeatedly to go over ground that he already had covered in direct or cross-examination, or both, in a manner which seemed to indicate that the court was critical and skeptical of what the witness had said.

At an appropriate point counsel for the plaintiff objected that the court was conducting a prejudicial examination of the witness. The court thereupon offered to declare a mistrial if the plaintiff would pay all costs of that day's proceeding, including the costs and fees of the jury. Plaintiff's counsel asserted that his client was unable to pay these expenses and again urged that a mistrial be declared. While the court refused to declare a mistrial it did instruct the jury as follows when the witness in question was allowed to leave the stand:

" * * * Ladies and gentlemen, I think, under the circumstances that certain things require an explanation by the court at this time. Objection has been made to my questioning of Mr. Spence, and one of the objections was that my questioning was in the nature of cross-examination. Cross-examination is usually referred to as the examination conducted opposite to the examination that is conducted by the lawyer that calls the witness to the stand. If the impression was created that my examination was cross-examination that was not the intention of the court. I didn't intend to create such an impression. I think you will well recognize that by reason by Mr. Spence's difficulty with his hearing that everybody has had difficulty with him, and, I guess, most of all, the court reporter in asking questions of him, and, consequently, in order to make certain he heard what I was saying and asking him, I had to raise my voice. It wasn't meant to cast his testimony in any different light than anyone else's testimony that the court questioned him. The court feels it has an obligation and a duty that when certain matters are not clear in my mind, I have an inference, at least, that they possibly might not be clear in your mind, and I am under an obligation and a duty to see if, by subsequent questioning, we can make this particular point clear, and that is the sole purpose of my questioning of Mr. Spence, or any other witness, and I care not by whom they are produced, whether they are produced by one side or the other."

Apparently the trial judge realized that he had gone quite far in taking over the witness and in manifesting a critical view of his testimony. And certainly in the above quoted statement the court said as much as could be said after the event to remedy any prejudice which may have been created in the minds of the jurors. Yet, if this had been a key witness rather than one who had given relatively unimportant rebuttal testimony, there would have been a substantial question whether the plaintiff's case had suffered serious prejudice. Cf. Glover v. United States, 8 Cir., 1906, 147 F. 426. Parker v. State, 1915, 132 Tenn. 327, 178 S.W. 438, L.R.A.1916A, 1190. But the most that the testimony of this witness could have accomplished, had it been received without the extended critical intervention of the court, would have been to raise a doubt whether the state trooper arrived quite as soon as the case for the defendants indicated. All of the testimony considered, we can-

not find this a very important fact, although appellant has argued that it was. We cannot see how, in the light of the entire record, a reasonable juror could make his decision turn upon whether the observation and measurements made by the state trooper occurred twenty minutes or forty minutes after the accident. There is no such evidence of alterations of the scene during the interval as would make this time element obviously important. Indeed, the only occurrence alleged was the minor mishap of the witness himself whose car skidded through garbage apparently scattered by the careening garbage truck immediately after the earlier collision. We have examined the record and see no way in which any marks left by this sliding through garbage scattered beyond the point of the original mishap could have caused confusion in the recording or measuring the evidence of that accident.

In brief, on the present record we are not persuaded that the long critical examination of the witness in question by the court constituted prejudicial error. At the same time, particularly in a case of this sort where both sides are represented by eminently competent counsel we think it important that the court minimize its own questioning of witnesses, to the end that any such judicial departure from the normal course of trial be merely helpful in clarifying the testimony rather than prejudicial in tending to impose upon the jury what the judge seems to think about the evidence. Not long ago Judge Kalodner, speaking for this court, had occasion to caution that "trial judges should ever keep in mind the manifest dangers of overparticipation in the examination and cross-examination of witnesses." See United States v. Neff, 3 Cir., 1954, 212 F.2d 297, 313. We repeat that admonition.

On the entire record we are satisfied that there is no reversible error.

The judgment will be affirmed.